# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| CALVIN JOHNSON | * | CIVIL ACTION NO. 07-1504 |
|---|---|---|
| VERSUS | * | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Calvin Johnson, born August 2, 1966, filed applications for a period of disability, disability insurance benefits and supplemental security income on May 10, 2005, asserting that he became disabled on January 1, 1995, due to back and neck problems, insulin-dependent diabetes and hypertension.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Consultative Examination by Dr. Tosheiba Holmes dated July 9, 2005**. Claimant presented with diabetes, hypertension, and lower spine problems. (Tr. 85). He complained of tingling in his left foot and a sensation that his feet were cold all the time. He stated that he had low back pain in the lower spine, pain with sitting down and getting up, and pressure pain in his low back. He reported that the right side of his body had always been smaller than the left. He also said that he had a pounding headache occurring daily and lasting three to four hours with nausea and dizziness.

Claimant reported that he was limited from going to work because he was not able to stand and sit for long periods of time, and by his diabetes. He stated that he could dress and feed himself, stand for five to ten minutes for a total of seven hours out of an eight-hour day, walk on level ground for a half mile, sit for five to ten minutes, lift 10 to 20 pounds, drive a car for 30 minutes, and do household chores, including cooking and washing dishes.

Claimant's medications included Diovan and Amaryl. (Tr. 86). He stated that he smoked a pack of cigarettes per day.

On examination, claimant was reportedly 69 inches tall and weighed 295 pounds. His blood pressure was 128/76. He had a normal gait, and had no problems getting on and off the exam table, up and out of the chair, or dressing and undressing himself.

Claimant's lungs were clear. His heart was normal.

On spine/extremities exam, claimant had no edema, clubbing, cyanosis, redness, swelling, or effusion. (Tr. 87). His hand grip strength was 5/5 bilaterally. Dexterity was intact. He was able to manipulate shoelaces.

Straight leg raise was negative. Claimant was able to elevate on his heels and toes, and squat towards the ground. Motor exam was 5/5 in all muscle groups. Claimant had no atrophy.

Sensation was intact to light touch. Cranial nerves were intact. Deep tendon reflexes were 2+ and symmetrical.

A chest x-ray revealed a CT ratio of 0.42. No acute cardiopulmonary processes were noted. Lumbar spine films were significant for a mild facet arthropathy consistent with mild lumbar spondylosis.

Dr. Holmes' impression was low back pain without evidence of acute radiculopathy; a history of diabetes mellitus, with claimant reporting medical compliance, and hypertension, with claimant reporting medical compliance. (Tr. 87-

88). Claimant's blood pressure was within an acceptable range on examination. He possibly had early signs of peripheral neuropathy. Monofilament was 10 out of 10, but claimant did have a sensation of cold feet quite frequently.

**(3) Residual Functional Capacity ("RFC") Assessment – Physical dated July 27, 2005**. L. Battiste opined that claimant could lift 50 pounds occasionally and 25 pounds frequently. (Tr. 90). He could stand/walk or sit about six hours in an eight-hour workday. He had unlimited push/pull ability. He had no other limitations. (Tr. 91-93).

**(4) Records from Our Lady of Lourdes Medical Center dated August 5, 1996 to December 12, 2006**. On August 5, 1996, claimant complained of weakness and tiredness. (Tr. 239). He had stopped taking his Glucotrol about two weeks prior. (Tr. 228). The impression was uncontrolled diabetes and mild hyperlipidemia.

On June 22, 1998, claimant complained of chest and lower back pain. (Tr. 218). X-rays of the lumbar spine showed no acute abnormality. (Tr. 222). Chest-rays were negative. (Tr. 221). The diagnosis was hyperglycemia. (Tr. 218).

Claimant was seen for pneumonia on January 5, 1999. (Tr. 199). He left against medical advice. (Tr. 200). The diagnoses were bilateral lower lobe pneumonia, pronounced weight loss, uncontrolled diabetes, superimposed yeast infection, umbilical hernia, bilateral weak inguinal rings, and old head trauma.

On March 28, 2000, claimant complained of blurred vision, chest pain, and a fast heart beat. (Tr. 185). A stress test showed good exercise tolerance at 11 minutes, and was negative. (Tr. 187). A 2-D echocardiogram was consistent with left ventricular hypertrophy and hypertensive cardiovascular disease. A gallbladder ultrasound was unremarkable and normal. The diagnoses were chest pain with a negative stress test, hypertensive cardiovascular disease, diabetes mellitus, hypercholesterolemia, hypophosphatemia, and slightly elevated CEA at 2.9. (Tr. 186).

On October 20, 2001, claimant presented with chest pain and vomiting. (Tr. 163). A combined M Mode/2D echocardiogram showed a dilated left atrium and some concentric hypertrophy of the left ventricle with a trace of tricuspid regurgitation, suggestive of some hypertensive cardiovascular disease. (Tr. 174). The impression was acute pancreatitis, chest pain, insulin dependent diabetes mellitus, and tobacco/alcohol abuse. (Tr. 164). Claimant was instructed to avoid alcohol and tobacco.

On October 16, 2003, claimant had high blood sugar. (Tr. 150). He was supposed to be on an 1800-calorie ADA diet, but said that he did not follow it. His blood pressure was 149/96. The impression was poorly controlled diabetes. He was

instructed to follow his diabetic diet, check his blood sugars twice a day, and increase his Avandia to the maximum.

On April 26, 2006, claimant complained of high sugar, headache, and burning in urination. (Tr. 125). He smoked one pack of cigarettes per day, and used alcohol occasionally. The impression was diabetes mellitus and a possible urinary tract infection. (Tr. 126).

On October 30, 2006, claimant complained of a sharp, sticking pain in the chest. (Tr. 112). He had had some elevated blood sugars over the prior couple of weeks, for which he reportedly was under the care of Dr. Charles Dugal. He smoked two packs of cigarettes per day, and drank alcohol daily.

X-rays showed increased interstitial markings bilaterally. (Tr. 113). Dr. Joseph Pearson encouraged him to stop smoking. The impression was bronchitis.

On December 12, 2006, claimant was admitted with pain in the great left toe. (Tr. 107). He admitted that he had been drinking quite a bit of beer. The diagnosis was gout of the left great toe. (Tr. 108).

**(5) Orthopedic Consultative Examination by Dr. Stephen Wilson dated March 6, 2007**. Claimant complained of lower back and neck problems for three years. (Tr. 246). He stated that his back pain radiated to the posterior aspect of both

hips. He reported that he always had to buy a larger shoe for his left foot because it was larger than the right. He smoked ½ pack of cigarettes per day.

Claimant was 5 feet 11½ inches tall, and weighed 190 pounds.[1] He had tenderness in the posterior neck area, and some pain on rotation to the right and left. He had some pain on forward flexion at 30 degrees.

On orthopedic and neurologic examination of the upper extremities, claimant had no evidence of muscle spasm, muscle weakness, or atrophy. He had no gross deformity or decreased range of motion in any joints. Sensation was normal with good palpable radial pulses. The biceps, triceps, and brachioradialis reflexes were present and equal bilaterally. Claimant had no subjective or objective numbness in the upper extremities.

Low back examination revealed tenderness to palpation on both sides. (Tr. 247). Claimant's right thoracic musculature was more developed than the left. He could heel and toe walk without difficulty. He had pain in the lower back when he forward flexed at 40 degrees. His symptomatology was "somewhat exaggerated."

Examination of the lower extremities revealed no evidence of muscle atrophy, weakness, or palpable muscle spasm. There was no gross joint deformity. Reflexes

---

[1] Claimant's weight is reported, variously, as both approximately 190 pounds and 290 pounds. The weight difference makes no difference to the recommendation made herein.

were present and equal.  Claimant had no numbness.

Claimant had good strength on dorsiflexion of the feet and toes.  Pulses were palpable and equal.  Straight leg raising was negative bilaterally.  His left thigh measured 1.5" greater than on the right, and his left calf measured 1" greater than the right.  His left foot was one size larger than the right.

Cervical spine x-rays showed no evidence of any type of fracture or dislocation.  Alignment of the vertebrae was satisfactory.  X-rays of the lower back showed no evidence of fracture or dislocation.  Claimant had some minimal degenerative changes.  The left acetabular and pelvic area was somewhat thicker and denser than the right, and the right femur was larger and denser than the right hip.

Dr. Wilson opined that claimant's orthopedic and neurological examination of the extremities was essentially within normal limits.  He noted that claimant's left lower extremity was larger and more than right.  The right thoracic musculature is developed than the left.  He did have some very minimal degenerative changes in the lower back.

Dr. Wilson found no reason why claimant should not be able to return to some form of gainful occupation.  (Tr. 248).  With claimant's muscle imbalance and the minimal degenerative changes in the lower back, Dr. Wilson advised claimant to return to work where he did not have to lift more than 60 pounds or more than 20

8

pounds on a regular basis. He stated that claimant should also return to activities that required only occasional bending, stooping, crawling, or climbing. He opined that within these limitations, claimant should be able to return to some form of gainful occupation. He noted that motivation would have a great deal to do with when and if claimant decided to return to the work force.

In the Medical Source Statement of Ability to do Work-Related Activities (Physical), Dr. Wilson opined that claimant could lift/carry 10 to 20 pounds continuously, 21 to 50 pounds frequently, and 51 to 100 pounds occasionally. (Tr. 249). He stated that claimant could sit, stand, and walk a total of eight hours without interruption, and for eight total hours in an eight-hour workday. He did not require a cane to ambulate.

Claimant could use his hands, operate foot controls, and do all postural activities continuously over 2/3 of the time. (Tr. 251-52). He could perform daily activities like shopping, traveling without assistance, ambulating without an assistive device, walking a block at a reasonable pace on rough or uneven surfaces, using public transportation, climbing a few steps at a reasonable pace with the use of a handrail, preparing a simple meal and feed himself, caring for personal hygiene, and using paper/files. (Tr. 254).

9

**(6) Consultative Examination by Dr. Mark H. Dawson dated March 19, 2007**. Claimant asserted disability due to diabetes, hypertension, and back pain. (Tr. 256). His medications included Levemir, 30 units every morning and afternoon, and Lotrel, one daily for hypertension. He was a smoker, but did not consume alcohol on a regular basis.

Claimant denied chest pain. He stated that he had some back pain, but was very vague in nature.

On examination, claimant was 69 ½ inches tall, and weighed 191 pounds. His blood pressure was 130/80. His heart had regular rate and rhythm without murmur. (Tr. 256-257).

Claimant's gait was acceptable, but he did have a fracture boot on this left leg. He stated that he had recently fractured his toes. Because of that, Dr. Dawson did not do toe or heel walking.

Dr. Dawson's assessment was diabetes, hypertension, normal neurological exam, and acute fracture of the toe. He saw no end organ damage from diabetes or hypertension.

In the Medical Source Statement of Ability to Do Work-Related Activities (Physical), Dr. Dawson found that claimant could continuously lift and carry up to 100 pounds. (Tr. 258). He stated that claimant could use his hands and feet

10

continuously. (Tr. 260). He could also perform all postural activities continuously. (Tr. 261). He could do all daily activities listed. (Tr. 263).

**(7) Claimant's Administrative Hearing Testimony**. At the hearing on January 24, 2007, claimant was 40 years old. (Tr. 271). He had a 12th-grade education. (Tr. 272). He had last worked in May of 2006 in sandblasting and painting. Prior to that, he had worked as a machine operator, 18-wheeler driver, and security guard.

Claimant testified that he had quit working because of problems with his feet and diabetes. (Tr. 273). He stated that his feet swelled and hurt. He reported that he had blurred vision when he bent down.

Claimant stated that he was taking Diovan for high blood pressure and Lortab for lower back pain. (Tr. 273-74). He was also taking a muscle relaxant and Humulin for diabetes. (Tr. 274).

Claimant reported that his 14-year-old son was living with him. (Tr. 274-75). He stated that he could bathe and dress himself, drive, and sometimes do the grocery shopping. (Tr. 275). He said that he could cut the grass with a riding mower.

Regarding restrictions, claimant stated that he could sit for about 30 minutes to an hour before having back pain. (Tr. 275-76). He reported that he could stand for about 20 minutes, then started to feel "pressing" on his lower back. (Tr. 280). He

11

said that he could walk about one block, but felt foot pain sometimes. (Tr. 276, 281). He testified that he could not normally squat, but could bend. (Tr. 276).

As to complaints, claimant testified that he had pain in his feet and back. He stated that he relieved his back pain by taking Lortab and lying down flat. (Tr. 277).

**(8) The ALJ's Findings are Entitled to Deference**. Claimant argues that: (1) the ALJ erred in finding that claimant could return to his past work as a truck driver, machine operator, or security guard, and (2) the ALJ erred in failing to use a vocational expert.

As to the first argument, the medical records show that claimant had the residual functional capacity to perform his past work. The consultative orthopedic surgeon, Dr. Wilson, found no reason why claimant should not be able to return to some form of gainful occupation. (Tr. 248). He advised claimant to return to a job where he did not have to lift more than 60 pounds or more than 20 pounds on a regular basis, and required only occasional bending, stooping, crawling, or climbing.

In the Medical Source Statement, Dr. Wilson opined that claimant could lift/carry 10 to 20 pounds continuously, 21 to 50 pounds frequently, and 51 to 100 pounds occasionally; sit, stand, and walk a total of eight hours without interruption, for eight total hours in an eight-hour workday; use his hands, operate foot controls, and do all postural activities continuously over 2/3 of the time, and perform daily

12

activities like shopping, traveling without assistance, ambulating without an assistive device, walking a block at a reasonable pace on rough or uneven surfaces, using public transportation, climbing a few steps at a reasonable pace with the use of a handrail, preparing a simple meal and feed himself, caring for personal hygiene, and using paper/files. (Tr. 249-54). Similarly, Dr. Dawson found that claimant could continuously lift and carry up to 100 pounds; use his hands and feet continuously; perform all postural activities continuously, and do all activities listed on the form. (Tr. 258-63). Additionally, no physician on record has pronounced claimant disabled. *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir.1989). Thus, the medical records support the finding that claimant could return to his past work.

Counsel for the claimant argues that the ALJ failed to make detailed findings of fact as required by *Latham v. Shalala,* 36 F.3d 482 (5th Cir. 1994), showing that claimant could return to his past work. Counsel is incorrect. The ALJ specifically compared claimant's residual functional capacity with the physical and mental demands of his past work, and found that claimant's past work demands were well within his residual functional capacity. (Tr. 18-19). That finding is entitled to deference.

Additionally, the evidence shows that claimant was non-compliant with his medications for diabetes. (Tr. 150, 200, 228, 239). Further, he failed to adhere to his

physicians' instructions to stop drinking, follow his diet, and avoid alcohol. (Tr. 107, 112, 113, 125, 150, 246, 256). It is well established that failure to follow prescribed medical treatment precludes an award of benefits. 20 C.F.R. § 404.1530(a), (b); *Johnson v. Sullivan*, 894 F.2d 683, 685, n. 4 (5th Cir. 1990). Thus, this argument lacks merit.

As to the second argument, claimant assets that the ALJ should have consulted a vocational expert. However, it is not necessary for the ALJ to consult a vocational expert when he finds that claimant is able to return to his past work at step four. *Harper*, 887 F.2d at 97 (lack of expert testimony becomes irrelevant when it is found that the claimant is capable of performing past relevant work); 20 C.F.R. § 404.1560(b)(2). Thus, this argument lacks merit.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed January 6, 2009, Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE